UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| ROXANNE ADAMS, Administrator of the Estate of Jamycheal M. Mitchell, Plaintiff, v. NAPHCARE, INC. et al., Defendant. | Civil Action No: 2:16-cv-229 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Roxanne Adams is the administrator of the estate of Jamycheal M. Mitchell, a pre-trial detainee who died while incarcerated at the Hampton Roads Regional Jail. Plaintiff has brought this action against a variety of jail officials, correctional officers, jail medical care providers and administrators, Portsmouth General District Court clerks, a clerical state hospital employee, and the Commissioner of the Virginia Department of Behavior Health and Developmental Services ("DBHDS"). Plaintiff has alleged that each of these Defendants, acting in their personal capacities, caused or contributed to cause the wrongful death of Mr. Mitchell and the violation of his civil rights. The Court has held multiple hearings on this matter, at which counsel for the parties have argued zealously and passionately.

Most recently, on October 19, 2016, the Court held a hearing on motions to dismiss filed by fifteen of the thirty-eight Defendants. These motions were referred to the undersigned for report and recommendation by the Chief District Judge. The hearing, which lasted for four hours, included argument regarding the dispositive motion filed by Defendant Ferguson, the

DBHDS Commissioner. One of the affirmative defenses raised by Commissioner Ferguson is qualified immunity, and this issue was argued extensively at the hearing by her counsel, David Corrigan, and by Plaintiff's counsel, John Preis. Mr. Preis, an attorney of record in this case, is also a full-time professor with the T.C. Williams School of Law at the University of Richmond. At the conclusion of the hearing the Court took the motions under advisement in order to prepare reports and recommendations to the Chief District Judge.

Two days later, on October 21, 2016, the law clerk for the undersigned attended the Institute for Federal Law Clerks seminar held at the law school at University of Richmond. This seminar, which is sponsored biennially by the District Judges Association of the Fourth Circuit and the University of Richmond, is limited in attendance to federal law clerks in the Fourth Circuit. Thirty-five law clerks from the Eastern District of Virginia were in attendance, including the undersigned's and all of those of the Chief District Judge. Mr. Preis was one of the lecturers at this seminar, speaking on the topic of "Recent Developments in the United States Supreme Court and the Fourth Circuit." Following the conclusion of his prepared remarks, Mr. Preis addressed the doctrine of qualified immunity, which was unrelated to his topic. In these remarks, he specifically discussed the instant case, advising the audience that he was presently involved in this litigation and addressing the qualified immunity defense asserted by Commissioner Ferguson. Although he did not refer to her by name, he did refer to Commissioner Ferguson generally as a state agency commissioner responsible for the medical care of state prisoners. In addition, he presented to the assembled law clerks his perspective on why the qualified immunity defense should not be available. Mr. Preis' remarks were not recorded on either video or audio. Of course, neither Mr. Corrigan nor any of the other counsel for the defendants was in attendance at this seminar.

Having been advised by the undersigned's law clerk of these events and being concerned about the possibility that Mr. Preis' conduct might constitute an attempted ex parte communication, the Court issued its Order on October 27, 2016, advising the parties of these events and setting the matter for hearing. Canon 3A(4) of the Canons of Judicial Ethics provides, *inter alia*:

> Except as set out below, a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested.[1]

By its Order the Court advised the parties of their opportunity to respond at the hearing, if they so requested. The Court also included in its Order a direction to Mr. Preis to show cause "why the Court should not consider his conduct to constitute an attempted ex parte communication as to the merits of this case, in contravention of Rule 3.5(e) of the Virginia Rules of Professional Conduct."[2]

Prior to the hearing, Mr. Preis filed a response to the Court's Order on October 28, 2016,

---

[1] In addition, the commentary to Canon 3A(4) provides: "A judge should make reasonable efforts to ensure that law clerks and other court personnel comply with this provision."

[2] Rule 3.5(e) of the Virginia Rules of Professional Conduct provides:
In an adversary proceeding, a lawyer shall not communicate, or cause another to communicate, as to the merits of a cause with a judge or official before whom the proceeding is pending, except:
(1) in the course of official proceedings in the cause;
(2) in writing if the lawyer promptly delivers a copy of the writing to opposing counsel or to the adverse party who is not represented by a lawyer;
(3) orally upon adequate notice to opposing counsel or to the adverse party who is not represented by a lawyer; or
(4) as otherwise authorized by law.
In addition, Comment (3) to this Rule provides:
All litigants and lawyers should have access to tribunals on an equal basis. Generally, in adversary proceedings a lawyer should not communicate with a judge relative to a matter pending before, or which is to be brought before, a tribunal over which the judges presides in circumstances which might have the effect or give the appearance of granting undue advantage to one party.

3

in which he acknowledged the appropriateness of the Court's concern and expressed regret "that his conduct has given rise to such concerns." ECF No. 141 at 1-2. Following that introduction, Mr. Preis then provided a statement of facts explaining the circumstances of his conduct at the seminar, and advanced three arguments seeking to establish that he had not violated the aforementioned Virginia Rule of Professional Conduct. *Id.* at 2-10. First, he stated he did not know the aforementioned law clerks were present so he could not have attempted to communicate with them. *Id.* at 7. Additionally, Mr. Preis equated his comments before the federal law clerk audience to a general public communication, claiming that if this was an attempted ex parte communication, "then many other public statements could reasonably be deemed ex parte communications as well." *Id.* Lastly, he contended he "did not advocate a particular result or urge a particular position" in his remarks. *Id.*

The hearing was subsequently held on November 1, 2016. ECF No. 143. Mr. Mark Krudys and Mr. Preis represented the Plaintiff. Also present were Mr. Corrigan for Defendant Ferguson; Ms. Grace McNelis for Defendants Naphcare, Inc., Kolongo, Edwards, Ray, Ngwa, Johnson, Thomas, Rivers, Nicholson, and Murphy; Mr. Nicholas Simopoulos for Defendants Boyd and Davis; Mr. Jeffrey Hunn for Defendants Hampton Roads Regional Jail Authority, Hampton Roads Regional Jail, Simons, Taylor, Gibbs, Hilliard, Keister, Powell, Smith, Johnson, Phillips, Everette, Madison, and Cowan; Mr. Gregory Holland for Defendant Hart; and Mr. Mark Colombell for Defendants Barnes, Blakely, Bourne, Butcher, Brown, Dixon, Epperson, Whitaker, R. Whitehead, and S. Whitehead. The transcript of the hearing was prepared and filed on November 14, 2016. ECF No. 145.

Mr. Preis addressed the Court first, and apologized for the "trouble" caused by his conduct. *Id.* at 6. He acknowledged that he had erred in addressing this case to the law clerks at

the seminar, and stated that he did not appreciate his error at the time. *Id.* at 7-8. He represented that he did not appreciate that any law clerks who were connected to this case might be in attendance at the seminar, and while he recognized the undersigned's law clerk as someone who looked familiar, did not make the connection that he was, in fact, the undersigned's law clerk. *Id.* at 8-9. Mr. Preis claimed he discussed this case as an illustration and did not intend to persuade the law clerks or argue his position. *Id.* at 9. He expressed his concern and regret over this situation and assured the Court that he took this matter seriously. *Id.* at 8.

The Court then provided each of the parties, through their counsel, an opportunity to respond. Mr. Corrigan, on behalf of Commissioner Ferguson, addressed the three arguments Mr. Preis advanced in his show cause response. First, Mr. Corrigan argued that, while he accepted Mr. Preis' representation that he did not appreciate that law clerks connected to this case were in attendance, he believed Mr. Preis should have known that. *Id.* at 11. Second, he argued that Mr. Preis' comments were not like a general public statement, because they were addressed to a limited audience composed solely of federal law clerks. *Id.* at 12. Third, he accepted that Mr. Preis believed he did not advocate for his position in his remarks, but proffered that it was more likely that he did so advocate since he believed a listener always knows which side of an issue a person is on when talking about a case, especially one in which they are involved. *Id.* at 12-13. Mr. Corrigan left it to the Court to decide what effect should be given Mr. Preis' conduct, and requested that it not favor the Plaintiff but instead be taken in consideration in weighing Commissioner Ferguson's motion to dismiss. *Id.* at 13.

Ms. McNelis then addressed the Court on behalf of Defendants Naphcare, Inc., Kolongo, Edwards, Ray, Ngwa, Johnson, Thomas, Rivers, Nicholson, and Murphy. She emphasized the potential outsized influence Mr. Preis might command before his law clerk audience, given his

status as a law professor. *Id.* at 14-15. She expressed concern that the fact that Mr. Preis saw fit to discuss this ongoing case outside the confines of this lawsuit might result in him later discussing the case with persons who might become jurors. *Id.* at 15. Consequently, she suggested that Mr. Preis' "continued involvement in this case raises some significant concerns..." *Id.* Nonetheless, she did not move to disqualify Mr. Preis as counsel or suggest any remedy. *Id.*

Mr. Simopoulos on behalf of Defendant Hart suggested that Mr. Preis should have been more careful than to discuss an ongoing case when addressing judicial law clerks from the Court in which that case is being litigated. *Id.* at 16.

Mr. Hunn on behalf of Defendants Hampton Roads Regional Jail Authority, Hampton Roads Regional Jail, Simons, Taylor, Gibbs, Hilliard, Keister, Powell, Smith, Johnson, Phillips, Everette, Madison, and Cowan took no position with respect to by the Court's October 27, 2016 Order and thus offered no response to Mr. Preis' conduct. *Id.*

Mr. Colombell then addressed the Court on behalf of Correctional Officer Defendants Barnes, Blakely, Bourne, Butcher, Brown, Dixon, Epperson, Whitaker, R. Whitehead, and S. Whitehead. He noted that Mr. Preis' conduct did not simply constitute public comments, but instead were remarks before a private audience of law clerks. He expressed concern that the case has generated significant publicity, which he argued has stemmed largely from the Plaintiff's side of the case. *Id.* at 17. Consequently, he noted that Mr. Preis' conduct may give the impression to his clients that Mr. Preis' private address to the law clerks could have persuasive effect on the Court. *Id.* at 18. Finally, he described the timing of Mr. Preis' conduct only two days after the motions hearing as "troublesome." *Id.*

Mr. Holland on behalf of Defendant Hart commented that a reasonable person "would

6

have to have suspected" that law clerks involved in this case would be in the audience, and that he was offended most that Mr. Preis acted as an advocate for his client's position before these law clerks. *Id.* at 19. He also stated that he did not "believe for a minute" that the Court or its law clerks would be influenced by this conduct. *Id.*

Mr. Preis, given an opportunity to respond, expressed appreciation for the remarks of opposing counsel, and reiterated that it did not occur to him that law clerks involved in this case would be in his audience. *Id.* at 20.

Plaintiff's co-counsel, Mr. Krudys, was given an opportunity to respond. *Id.* He acknowledged that Mr. Preis' conduct was a mistake and apologized to the Court and the other parties. *Id.* at 20-21. He vouched for Mr. Preis' good character. *Id.* at 21. He agreed that Mr. Preis should have known better than to have discussed this case at the seminar, but proffered that, as a law professor and not a full-time litigator, Mr. Preis did not appreciate or understand the context in which he made his remarks. *Id.* at 21-22. Finally, he stated it was clear that neither this Court nor Chief Judge Smith would be influenced by these events. *Id.* at 23.

In determining the proper course of action here, the Court makes the following observations and findings. First, it is wholly improper for an attorney involved in ongoing litigation to argue the merits and substance of his client's case before law clerks who are working with the judges who are deciding that case. Mr. Preis spent four hours actively participating in a hearing arguing dispositive motions which had been referred to the undersigned for report and recommendation. The undersigned's law clerk sat not fifteen feet before Mr. Preis during the entirety of that hearing. Two days later, Mr. Preis deviated from his prepared remarks to argue one of the very issues he had argued at the hearing before an audience of exclusively Fourth Circuit federal law clerks, thirty-five of whom were from the Eastern District of Virginia. The

7

undersigned's law clerk was sitting in the front row, even closer to Mr. Preis than he was at the hearing. Also at the seminar were the law clerks for the Chief Judge, who is the District Judge who referred these motions to the undersigned for report and recommendation, and who therefore will be the Judge to decide any objections which the parties may file. Mr. Preis claimed that he merely discussed the merits of this case before the law clerks by way of illustration. While Mr. Preis may believe he did not argue his client's position, there is no mistaking that the assembled federal law clerks believed that is exactly what he did. Mr. Preis also claimed that he did not appreciate that law clerks involved in this case were in attendance, and that, while he recognized the undersigned's law clerk at the seminar, he did not make the connection that he was the law clerk for the undersigned. Only Mr. Preis knows if this is actually the case.

Both the Virginia Rules of Professional Conduct and Canons of Judicial Ethics prohibit ex parte communications between an attorney and a judge (and the judge's staff) regarding the merits of a case. This prohibition is understood in the ordinary case as precluding lawyers from discussing the merits of their cases in person with or in correspondence to the judge. Research has failed to disclose any cases involving circumstances similar to this situation, however. Mr. Preis represented that he failed to appreciate the context of his remarks, and the perception that his remarks might constitute an attempted ex parte communication. He declared that he did not intend to engage in such communication. In hindsight, he recognized that his actions were a mistake, for which he apologized.

Each of the parties was given an opportunity to respond to this situation, as required by Canon 3A(4) of the Canon of Judicial Ethics. While expressing various degrees of consternation with Mr. Preis' conduct, none of the parties sought his disqualification or other specific sanction

against the Plaintiff. None of the parties sought recusal by the Court, or even suggested that the Court might be influenced by this conduct. Indeed, this Court has not been and is not influenced, swayed or otherwise persuaded by Mr. Preis' conduct.

Simply stated, Mr. Preis' conduct was improper and has been a significant and unnecessary distraction. Accordingly, Mr. Preis is **ADMONISHED** for his conduct in arguing the merits of Defendant Ferguson's qualified immunity defense before a private audience of federal law clerks, including the undersigned's and those of the Chief Judge, while this litigation is pending. That stated, Mr. Preis is an officer of the Court whose good character was attested to by his co-counsel and who may be considered more a full-time professor than a full-time litigator. The Court therefore accepts his representation that he did not intend or appreciate the fact that by arguing his case to the assembled law clerks, he may have engaged in an attempted ex parte communication. In light of the above conclusion, the Court finds there are insufficient grounds to impose further sanction, or to take any further action pursuant to Virginia Rule of Professional Conduct 3.5(e). The show cause Order is therefore **DISMISSED**.

In conclusion, the Court finds it necessary to include in this Order its closing remarks from the November 1 hearing:

> Let me respond by saying, first, that under no circumstances is this Court persuaded or at all influenced by anything that happened at that law clerk seminar.
> Secondly, certainly it was a mistake, certainly it was improper to be discussing, arguing ongoing litigation in front of the very law clerks who are involved on the judicial side of that case.
> This case will be decided on the facts and the law. Make no mistake, it will not be decided on extra-judicial statements, it will not be decided on press releases or news accounts, it will not be decided on emotion. So for all of you, for your parties, you can assure them that this Court, Chief Judge Smith, and the Fourth Circuit, and the United States Supreme Court, if necessary, will decide this case on the only grounds it should: The facts and the law. So make no mistake.

*Id.* at 23-24.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
November 14, 2016