UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| ROXANNE ADAMS,<br>Administrator of the Estate<br>of Jamycheal M. Mitchell,<br><br>Plaintiff,<br>v.<br><br>NAPHCARE, INC. et al.,<br><br>Defendant. | Civil Action No: 2:16-cv-229 |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Gail Hart's Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss"), filed on June 8, 2016, and Memorandum in Support. ECF Nos. 10 and 11. On June 22, 2016, Plaintiff Roxanne Adams, Administrator of the Estate of Jamycheal M. Mitchell, filed an opposition. ECF No. 22. Hart filed a reply on June 27, 2016. ECF No. 28. This matter was referred to the undersigned United States Magistrate Judge pursuant to a Referral Order from the Chief United States District Judge. ECF No. 38; *see also* 28 U.S.C. §§ 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72. The Court then held a hearing on the matter on October 19, 2016 at which Mark Krudys and John Preis represented the Plaintiff and Ryan Furgurson represented Defendant Hart. Accepting Plaintiff's allegations as true solely for the purpose of resolving Defendant's motion as the Court is required to do, for the following reasons the undersigned **RECOMMENDS** that the Court **DENY** Defendant Hart's Motion to Dismiss, ECF No. 10.

1

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Roxanne Adams is the aunt of the late Jamycheal Mitchell ("Mitchell"), and the administrator of his estate. ECF No. 1 ¶ 20 and attach. 1. According to the Complaint, Mitchell was diagnosed with a mild intellectual disability and suffered from mental illnesses, such as bipolar disorder and schizophrenia. *Id.* at ¶ 2. Mitchell was arrested on April 22, 2015, in Portsmouth, Virginia for allegedly stealing $5.00 in snacks from a 7-Eleven. *Id.* at ¶ 54. The Portsmouth General District Court ("PGDC") ordered Mitchell to be psychologically evaluated for competency and eligibility in a jail diversion program. *Id.* at ¶ 57. The case manager determined that Mitchell was an appropriate candidate for the diversion program, but that Mitchell refused to accept the services. *Id.* at ¶ 58. On May 11, 2015, Mitchell was transferred to Hampton Roads Regional Jail ("HRRJ") in Hampton, Virginia for medical and psychotropic treatment. *Id.* at ¶ 61. Mitchell received a psychological evaluation upon entering HRRJ pursuant to the PGDC order. *Id.* at ¶ 62. The evaluation concluded that Mitchell was manic, and should be committed to Virginia's Department of Behavioral Health and Developmental Services ("VDBHDS") for inpatient treatment to restore his competency under Virginia Code § 19.2-169.2. *Id.* On May 21, 2015, the PGDC then issued a competency restraining order ("CRO"), ordering Mitchell to be treated at Eastern State Hospital, a state mental hospital. *Id.* at ¶ 63. Mitchell remained in custody at HRRJ, awaiting transfer to Eastern State Hospital. *Id.* at ¶ 64. Mitchell died on August 19, 2015 at HRRJ. *Id.* at ¶ 2.

Defendant Gail Hart is an Eastern State Hospital admissions employee. *Id.* In her complaint Plaintiff asserted three counts against Hart: one count of negligence, gross negligence, and willful and wanton negligence (Count 1), *id.* ¶¶ 202-11, and two counts of deprivation of civil rights (denial, delay, and withholding of medical care) pursuant to 42 U.S.C.

2

§ 1983, *id.* ¶¶ 212-23, 252-58 (Counts 2 and 5). Plaintiff sued Hart in her individual capacity, though Hart "was at all relevant times, an employee of DBHDS and/or Eastern State Hospital, acting within the course and scope of her employment and/or agency with DBHDS, and under color of state law." *Id.* at ¶ 42.

In her complaint, Plaintiff alleged the following: PGDC faxed the CRO to Hart on July 31, 2015, but the CRO "*was never processed* by Eastern State because Defendant Hart, Admissions Coordinator at Eastern State Hospital, put the fax in her desk drawer and took no further action. The court order for Mitchell was never entered into Eastern State's Forensic Log, the index of individuals waiting for beds at Eastern State."[1] *Id.* at ¶ 84 (emphasis in original). As a DBHDS/Eastern State employee, Hart had a ministerial duty to "to properly act on the CRO's directives to admit Mitchell to Eastern State for the restoration of competency." *Id.* at ¶ 173. Mitchell was a pretrial detainee who was entitled to an immediate transfer to a hospital to being restorative treatment as per Va. Code § 19.2-169.2. *Id.* ("[I]nmates like Mitchell awaiting transfer pursuant to §19.2-169.2 are specifically excluded from the delineated lists of circumstances in which there may be a delay."). Accordingly, Plaintiff alleged that because Hart failed to properly act on the CRO, delaying Mitchell's admission into Eastern State, she breached the ministerial and statutory duties owed to Mitchell. *Id.* at ¶ 173. As a result of this breach, Mitchell's "condition worsened, he suffered great physical pain and mental anguish, and he died," *id.* at ¶ 200, and that Mitchell's surviving beneficiaries will continue to suffer this loss, *id.* at ¶ 201. Hart's inactions contributed to the denial of "necessary medical care, and/or access to

---

[1] The Complaint also references the scope of Hart's actions, though unrelated to Mitchell specifically: "The DBHDS Investigation indicates that state investigators learned that when Mitchell's CRO was discovered on August 24, 2015, after his death, approximately 10-12 other CROs were also found abandoned in Hart's desk drawer, also having not been entered into the Forensic Log. Defendant Hart reportedly told state investigators that as of August 24, 2015, she was still adding items to the Forensic Log from May 2015." ECF No. 1 at ¶ 84.

medical care, to include prescribed medications, medical treatment, and appropriate mental health care," *id.* at ¶ 215, in addition to the deprivation of Mitchell's constitutional rights protected under 42 U.S.C. § 1983, *id.* at ¶¶ 219-20, 254-57.

On June 8, 2016, Hart timely filed the present Motion to Dismiss with an accompanying memorandum. ECF Nos. 10-11. On June 22, 2016, Plaintiff timely filed a memorandum in opposition, ECF No. 22, and Hart timely replied on June 27, 2016, ECF No. 28. Hart requested a hearing pursuant to Local Rule 7(E). ECF No. 29. The undersigned conducted a hearing in this matter on October 19, 2016. ECF No. 139

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To be sufficient under Rule 8, the pleading must meet two basic requirements: it must contain sufficient factual allegations and those allegations must be plausible. *Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826, 829 (E.D. Va. Jan. 27, 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). First, sufficient factual allegations include "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do;" rather, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Second, to "nudge[] their claims across the line from conceivable to plausible," *id.* at 570, "plaintiff[s] [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. Indeed, to achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will

"stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.*

Accordingly, "the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). When considering a motion to dismiss, only those allegations which are factually plausible are "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (noting that legal conclusions must be supported by factual allegations). In other words, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

### III. ANALYSIS

Defendant Hart asserted two grounds for dismissal under Rule 12(b)(6). First, Hart argued that any action or inaction by Hart was not a proximate cause of Mitchell's death. ECF No. 11 at 4. Second, Hart argued that the actions of other defendants were intervening and superseding causes of Mitchell's death. *Id.* at 5.

**A.     Proximate Cause**

    1.     <u>The Parties' Arguments</u>

Hart argued, "Plaintiff's claims against Hart, both under Virginia common law and pursuant to 42 U.S.C. § 1983, fail as a matter of law because Hart's alleged actions (or inaction) were not a proximate cause of Mitchell's death." *Id.* at 4. Hart emphasized that Virginia law defines proximate cause as occurring when the injury is the "natural and probable consequence" of the negligence, *i.e.*, consequences that are reasonably foreseeable. *Id.* (citing *Wyatt v.*

5

*Chesapeake & Potomac Tel. Co.*, 163 S.E. 370 (Va. 1932)). Hart concluded, arguing that it is not reasonably foreseeable that her alleged actions—failing to process the CRO, and ultimately, failing to admit Mitchell to Eastern State—would lead to Mitchell's death, thus eliminating the element of proximate cause. *Id.* at 5. Specifically, Hart argued that she could not have foreseen that Mitchell would be denied medication, water, and food, or that he would be subject to physical abuse at HRRJ. *Id.* Hart contended that, at least with respect to Count I, Plaintiff has only asserted a wrongful death, and not a survival claim. ECF No. 28 at 1. Therefore, Hart argued, Plaintiff was required to state a plausible claim that Mitchell's death was a reasonably foreseeable consequence of Hart's failure to process the CRO. ECF No. 22 at 5. ("Simply put, it was not reasonably foreseeable that Mitchell would die if he was not admitted to Eastern State."). Further, Hart noted that while in most cases the issue of proximate cause is a factual issue for the jury, in cases such as this, "proximate cause may become an issue of law if the facts alleged are susceptible of only one inference." *Id.* at 4 (citing *Schieszler v. Ferrum Coll.*, 236 F. Supp. 2d 602 (W.D. Va. 2002)).

Plaintiff responded, stating that she asserted both wrongful death and survival claims against Hart, thus seeking damages "not only for Mitchell's death, but also for his pain and suffering." ECF No. 22 at 7. Plaintiff asserts that Hart's actions were a proximate cause of Mitchell's pain and suffering, and that "*if* Mitchell *had been* admitted to Eastern State, once there in a state mental hospital setting, he *could* have been compelled to receive needed medications and treatments if he was incapable of accepting them voluntarily due to his illness. Such is the restorative care protocol." *Id.* at 8 (emphasis in original). Plaintiff also argued that Mitchell's pain, suffering, and eventual death were reasonably foreseeable harms resulting from Hart's failure to admit Mitchell to Eastern State: "[Hart's] deliberate indifference to Mitchell's

6

serious medical needs caused the exact sort of harm that normally and logically flows from such indifference (*at a minimum*, prolonged illness)." *Id.* at 9 (emphasis in original). For one, Hart's deliberate ignorance of the CRO prevented Mitchell's admittance into Eastern State, denying him needed medical care, which "obviously carries with it *some* level of pain and suffering." *Id.* at 15-17 (emphasis in original). As a result, Plaintiff asserted that Hart "is responsible for the full extent of this harm—including his death." *Id.* at 17. Finally, Plaintiff emphasized that proximate cause is an issue for the jury and "[a]s long as reasonable minds could at least differ on the issue, the question must be submitted to a jury." *Id.* at 11.

2. Analysis

In Virginia, "The proximate cause of an event is that act or omission which, in natural and continuing sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Dorman v. State Indus., Inc.*, No. 151088, 2016 WL 3361755, at *5 (Va. June 16, 2016) (quoting *Kellermann v. McDonough*, 684 S.E.2d 786, 793 (Va. 2009)). Any consequent injury must have been reasonably foreseen by the exercise of reasonable care. *See RGR, LLC v. Settle*, 764 S.E.2d 8, 20 (Va. 2014); *Maroulis v. Elliott*, 151 S.E.2d 339, 344 (Va. 1966) ("Liability ensues when injury results from a risk or hazard which may be reasonably foreseen, although the precise injury may not be foreseen."). Moreover, there can be more than one proximate cause of an injury. *See Harman v. Honeywell Int'l, Inc.*, 758 S.E.2d 515, 526 (Va. 2014) (discussing model jury instructions on proximate cause in Virginia). The issue of proximate cause here applies to both the negligence and the § 1983 claims against Hart, as "the causal link in § 1983 cases is analogous to [common law] proximate cause." *Shaw v. Stroud*, 13 F.3d 791, 800 (4th Cir. 1994).

As alleged by Plaintiff, Hart was an admissions coordinator at Eastern State, and as part

of her duties, was responsible for processing CROs, which ultimately enables the subject of a CRO to be admitted to Eastern State. When it came to Mitchell's CRO, which Hart received on July 31, 2015, she apparently put it in her desk drawer, and never entered Mitchell's name into the Eastern State admittance log. Hart's duties did not permit her any discretion to not add him to the log. Her actions led to a delay (or failure) to admit Mitchell. As a result, Mitchell never received the appropriate medical and mental health care, and continued to suffer at HRRJ, ultimately dying. Plaintiff does not dispute that there are other defendants who all acted in ways that contributed to Mitchell's death, but there is no doubt that Plaintiff has alleged that Hart is liable for proximately causing Mitchell's injuries and subsequent death. ECF No. 22 at 15.

In each of her counts, whether for negligence or deprivation of civil rights, Plaintiff is required to plead plausible claims that Hart's conduct proximately caused injury. Plaintiff averred that any injury suffices under either the negligence claim or the civil rights claims, because she has adequately pled alternate causes of action for wrongful death under Va. Code § 8.01-50, and for personal injuries not resulting in death, under Va. Code § 8.01-25 (the survival statute). In examining the proximate cause question with respect to the civil rights claims, Plaintiff was required to allege that Hart and others proximately caused a deprivation of Mitchell's civil rights. Count 2 of Plaintiff's Complaint alleged that Hart's failure to process Mitchell's CRO constituted a deliberate indifference to Mitchell's medical needs and proximately caused him physical injuries, severe mental anguish and death in violation of Mitchell's Fourteenth Amendment constitutional rights. Count 5 of the Complaint alleged that Hart's conduct proximately caused a deprivation of Mitchell's right to due process under the Fourteenth Amendment, including the right to treatment for his medical disabilities. While disputing the extent of the injuries Mitchell allegedly suffered, Hart's counsel conceded at the

hearing that at least some deprivation of civil rights here would be a jury question. ECF No. 144 at 10 ("[I]f we're talking about the bare violation of the liberty interests of Mr. Mitchell, we would concede that the proximate cause would be a jury issue.") *See also id.* at 13. Moreover, Plaintiff has specifically averred facts alleging that Hart's failure to fulfill her duty to process Mitchell's CRO, which would have ensured that he received the hospital care to which he was entitled under the CRO as a pretrial detainee, caused him at least some injury. Hence, Plaintiff has adequately pled, for purposes of a Rule 12(b)(6) motion, a plausible claim that Hart proximately caused a violation of Mitchell's civil rights.

Plaintiff's negligence claim is more problematic. Hart contended that Plaintiff cannot pursue a survival claim because she has unequivocally claimed that the Defendants' conduct resulted in Mitchell's death. Therefore, Hart argued, Plaintiff must allege a plausible claim that Mitchell's death was foreseeable, not just some injury to him. Hart is correct. Although Plaintiff contended that she has pled the survival and wrongful deaths claims in the alternative, she did not plead wrongful death and survival claims in separate counts, which would have clearly reflected alternative pleading, *see* Walter E. Hoffman, *Recovery in Wrongful Death Actions in Virginia*, 8 Wash. & Lee L. Rev. 169, 170 (1951) (determining that there was "no doubt the pleadings in [wrongful death and survival] actions will require separate counts or allegations in order to advise the court and opposing counsel"). Further, at no point in her Complaint did Plaintiff allege that the conduct of Defendants resulted in injuries to Mitchell, *but that those injuries did not cause his death.* In other words, Plaintiff's Complaint makes clear that her position is that Mitchell's death was solely and proximately caused by Defendants' conduct, and not from some other reason not attributable to Defendants. By failing to so plead, Plaintiff has failed to assert a valid survival claim.

Plaintiff's counsel argued at the hearing that he believed that a plaintiff has the right to elect at her sole discretion whether to pursue a survival cause of action instead of a wrongful death action, even if there is no dispute that defendants' conduct proximately caused the death. ECF No. 144 at 27. This is patently incorrect under Virginia law. *El-Meswari v. Washington Gas Light Co.*, 785 F.2d 483, 491 (4th Cir. 1986) (holding that "§ 8.01–25 defers to the wrongful death statute as the exclusive statement of the grievances that Virginia will recognize when a tort victim dies of her injuries."). Simply stated, if a plaintiff contends that a defendant's negligence caused a decedent's death, and does not assert as an alternative that the negligence caused injury but not death, then only an action for wrongful death can be pursued under Virginia law. Consequently, by failing to plead as an alternative possibility that Hart's conduct led to injuries but those injuries did not cause Mitchell's death, (let alone by failing to plead alternatively in separate counts), Plaintiff has failed to assert a valid cause of action under the survival statute.[2] The Court will therefore examine the proximate cause question under the Virginia Wrongful Death Act with respect to Count 1, *i.e.*, whether a plausible claim has been pled that Hart proximately caused Mitchell's death. The question for this Court, therefore, is whether Mitchell's death at HRRJ was a reasonably foreseeable result of Hart's failure to add Mitchell to the admittance log.

At the motion to dismiss stage of this litigation, the undersigned is persuaded that whether Mitchell's death was reasonably foreseeable because Defendant Hart did not transfer him to Eastern State Hospital is a question that should be reserved to a jury. In federal court,

---

[2] *Centra Health, Inc. v. Mullins*, 670 S.E.2d 708, 716-17 (Va. 2009), cited by both parties, is not directly on point. In *Mullins*, the plaintiffs asserted a claim for wrongful death, alleging that Mullins' death was the result of sepsis caused by a urinary tract infection, and an alternate survival claim for the personal injuries sustained by Mullins prior to his death as a result of the hospital's negligent treatment resulting in the urinary tract infection. Here, unlike in *Mullins*, Plaintiff at no point pled that the Defendant's conduct alternatively may have caused Mitchell's injuries but not his death.

except in matters governed by the federal Constitution or federal statute, the law to be applied to the substantive claims in any case is the law of the state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, the law of Virginia applies to Plaintiff's negligence claim. "In Virginia, an injury is proximately caused by a defendant's negligence if the injury is the natural and probable consequence of the negligence." *Russo v. United States*, 37 F.Supp.2d 450, 452 (E.D. Va. 1999). "The natural and probable consequences are those which human foresight can foresee, because they happen so frequently that they may be expected to happen again." *Wyatt*, 163 S.E. at 372. Ultimately, the issue of proximate cause is a fact-specific inquiry that must be decided in a case-by-case manner. *See Settle*, 764 S.E.2d at 27 (quoting *Banks v. City of Richmond*, 348 S.E.2d 280, 283 (Va. 1986)) ("In resolving the question of proximate causation, 'each case necessarily must be decided upon its own facts and circumstances.'"). And as both parties recognized, the issue of proximate cause is generally a question of fact for the jury, unless "reasonable minds could not differ about what conclusion could be drawn from the evidence" *Simms v. Van Son*, No. 150191, 2016 WL 3208951, at *3 (Va. Feb. 12, 2016) (citing *Jenkins v. Pyles*, 611 S.E.2d 404, 407 (Va. 2005)); *see also Atkinson v. Scheer*, 508 S.E.2d 68, 71 (Va. 1998) ("Issues of negligence and proximate causation ordinarily are questions of fact for the jury's determination. A court decides these issues only when reasonable persons could not differ."); *Schieszler*, 236 F. Supp. 2d at 611–12 ("Ordinarily, however, questions of proximate cause are not decided on a motion to dismiss. They only become a question of law if the facts alleged are susceptible of only one inference.") (internal citation omitted)).

*Russo v. United States, supra,* is illustrative. There, Bruce Quagliato drove onto the Little Creek Naval Base and "became involved with a traffic incident with military officers." 37 F. Supp. 2d at 451. When Quagliato fled the base into the City of Virginia Beach, a Navy

dispatcher radioed to Virginia Beach Police "I have officers down," which plaintiffs alleged is "universally recognized by law enforcement personnel as connoting a police officer has been killed or gravely injured," even though no officers had been killed or gravely injured. *Id.* After the Virginia Beach Police chased the decedent for some time, they forced him off the road before they shot and killed him. *Id.* at 451-52. The administrator brought a wrongful death action against the United States under the Federal Tort Claims Act based on the dispatcher's conduct in negligently putting out the "officer down" call. Defendant United States argued in their Rule 12(b)(6) motion to dismiss that it was not reasonably foreseeable that the dispatcher's radio dispatch would lead to Quagliato being shot by persons not connected to defendant, and therefore the radio dispatch did not proximately cause Quagliato's death. *Id.* at 454-56. Denying the motion, the Court found that the plaintiff had sufficiently pled a wrongful death cause of action, concluding that "proximate cause is a question of fact for the jury, unless the facts are susceptible of only one inference" and that "[f]urther factual development will allow the court to determine the precise effect that this information had on the perception of the Virginia Beach police officers at the scene and determine if any other factors, not included in the complaint, may have also factored into [their] decision." *Id.* at 454-55.

Here, whether it was reasonably foreseeable that Defendant Hart's failure to process the CRO so that Mitchell could be transferred out of the HRRJ and into Eastern State Hospital proximately caused his death plausibly is a question of fact for the jury, much as was the question regarding the radio dispatcher's "officer down" broadcast. Factual development remains as to whether the facts asserted in the Complaint, and other facts yet to be developed, are susceptible to only one inference; i.e., that Mitchell's death was not reasonably foreseeable because Hart failed to process his transfer out of the jail. Plaintiff has plausibly alleged that

Hart's conduct in preventing a mentally ill pretrial detainee from being transferred out of a jail, where, because of his medical and mental disabilities, he did not receive necessary and proper treatment, to a mental hospital where he would have received such treatment, led to Mitchell's death. At this stage of the proceedings, reasonable minds could differ about what conclusion could be drawn from the evidence. Consequently, the undersigned **FINDS** that Plaintiff has sufficiently pled proximate cause to survive Defendant Hart's motion.

### B. Intervening and Superseding Acts

#### 1. The Parties' Arguments

Defendant Hart argued, "Hart's actions cannot be considered a proximate cause of Mitchell's death because the actions of other defendants were an intervening and superseding cause of Mitchell's death." ECF No. 11 at 5. The other defendants, Hart argued, committed intervening negligent acts by denying Mitchell medications, food and water, physically abusing him, and confining him to unsanitary conditions. *Id.* at 6.

Plaintiff responded, "The injury that Mitchell suffered – his mental and physical degradation – is the *exact sort of harm* that normally flows from failing to provide someone with medical treatment. . . . Hart cannot claim that she is not responsible for the medical harm Mitchell sustained simply because other persons may have also contributed to that harm in some way." ECF No. 22 at 18. Plaintiff concluded, arguing that Hart, just like all named defendants, caused Mitchell to suffer, materially and negatively impacting his health and well-being: "[A] jury could easily find that, where a pre-trial detainee suffers and dies after being denied appropriate medical care in a jail, a state official who failed day after day for approximately three weeks to provide him with court-ordered hospital care contributed 'in the slightest' to the detainee's death." *Id.* at 20.

2. <u>Analysis</u>

Superseding and intervening acts of negligence may eliminate a defendant's negligence in some circumstances. "[A] superseding cause of an injury 'constitutes a new effective cause and operates independently of any other act, making it and it only the proximate cause of injury.'" *Atkinson*, 508 S.E.2d at 71-72 (quoting *Maroulis*, 151 S.E.2d at 345). "In order to relieve a defendant of liability for his negligent act, the negligence intervening between the defendant's negligent act and the injury must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury." *Jenkins v. Payne*, 465 S.E.2d 795, 799 (Va. 1996); *Haga v. L.A.P. Care Servs., Inc.*, No. 1:01CV00105, 2002 WL 1754485, at *3 (W.D. Va. July 29, 2002) ("Although other events may take place between the breach of duty and the resultant harm, these so-called intervening causes do not relieve liability if the events were reasonably foreseeable by the original wrongdoer.") (applying Virginia law). "In other words, even if a defendant is in fact negligent, and his negligence created a situation of potential danger, if an unforeseeable independent intervening act ultimately brought about the accident, then the situation of danger created by the defendant's negligence becomes merely a circumstance of the accident but not a proximate cause of the accident." *Dorman v. State Indus., Inc.*, No. 151088, 2016 WL 3361755, at *5 (Va. June 16, 2016) (citing *Chereskin v. Turkoglu*, 369 S.E.2d 161, 162 (Va. 1988)) (internal citations omitted). As a result, "a defendant may be negligent and still not be liable for the resulting injury." *Dorman*, 2016 WL 3361755, at *5.

Because the Court cannot say, as a matter of law, that Mitchell's death was not a reasonably foreseeable result of Hart's failure to process Mitchell's transfer out of HRRJ, a reasonable mind could find that Hart's actions created a "situation of potential danger" that could

cause a mentally ill person, such as Mitchell, to be denied adequate medical and mental health care; i.e., Hart's continuous delay prolonged Mitchell's stay at HRRJ, preventing Mitchell from receiving the court-ordered treatment at a state hospital. A reasonable inference drawn from the Complaint is that PGDC ordered Mitchell to be treated at a state mental hospital and not merely at HRRJ because the jail could not provide Mitchell the needed treatment to restore his competency, and that time was of the essence when arranging such transfers.[3] Other defendants' actions in denying Mitchell medication, food, and water at HRRJ may not "so entirely supersede the operation of the defendant's negligence." *See Payne*, 465 S.E.2d at 799. Said another way, a superseding intervening cause occurs only when the defendant's negligence did not contribute "in the slightest degree" to the plaintiff's injury. *Atkinson*, 508 S.E.2d at 72. A reasonable mind could find that Hart's actions contributed in the slightest degree, e.g., delaying his mental health treatment, to Mitchell's pain, suffering, and death. *See Williams v. Le*, 662 S.E.2d 73, 77 (Va. 2008) (finding that a radiologist's failure to effectively communicate to the patient's treating physician in a timely manner contributed "in the slightest degree" to the death of the patient when the treating physician was also negligent by failing to treat and failing to answer his phone).

Moreover, even if Hart had no reason to believe that HRRJ would mistreat Mitchell, "an intervening cause is not a superseding cause if it was put into operation by the defendant's wrongful act or omission." *Jefferson Hosp., Inc. v. Van Lear*, 41 S.E.2d 441, 444 (Va. 1947). Plaintiff argued, "Mitchell's loss of life was a fluid process, with each Defendant[s'] failure materially and negatively impacting Mitchell's health and well-being." ECF No. 22 at 20. It is plausible that Hart's actions were one proximate cause of Mitchell's injuries in a chain of many

---

[3] This inference is supported by Plaintiff's observation that the Virginia Code provides that there to be no delay in transferring a defendant for treatment at a state hospital to restore his competency. ECF No. 22 at 4 (Va. Code § 19.2-169.2).

15

proximate causes leading to his loss of life. *See Jefferson Hosp.*, 41 S.E.2d at 444 ("A cause of an injury may be the proximate cause notwithstanding it acted through a series of events, if the events were combined in one continuous chain through which the force of the cause operated to produce the disaster."). For example, Hart's simple act of not adding Mitchell to the admittance log enabled further contributing negligent acts to occur. In *Molchon v. Tyler*, 546 S.E.2d 691, 693 (Va. 2001), the Supreme Court of Virginia found no error in the trial court's determination that a psychiatrist who discharged a mentally unstable patient from a state hospital could still face liability for proximately causing the patient's death when, after the patient was discharged, the patient consumed alcohol and was ultimately shot by a police officer in a "suicide by cop." Similarly, in *Haga*, 2002 WL 1754485, at *3, the court allowed plaintiff to introduce evidence concerning the negligence of a hospital in New York as a proximate cause of the decedent's death, on the ground that had the hospital not improperly discharged the decedent shortly before he was admitted to the defendant's facility, he could not have wandered away and ultimately been killed when hit by a train. Again, even in instances where there is a chain of events, whether or not each link amounts to proximate cause is generally a question for the jury.

*Cooper v. Ingersoll Rand Co.*, 628 F. Supp. 1488, 1490 (W.D. Va. 1986), relied on by Hart, is not dispositive. ECF No. 11 at 5-6. In *Cooper*, an employer's actions in violating a machine's safety regulations constituted a superseding and intervening act precluding liability of the machine's manufacturer when the employee was killed using the machine. The *Cooper* court found the employer's conduct was an intervening act because, "It [was] clear, [ ] that the mandatory safety regulations were not followed and that such negligence was an entirely independent act which the defendants neither brought about nor had control over." 628 F. Supp. at 1494. Here, Hart's failure to arrange the transfer of Mitchell from HRRJ to Eastern State

Hospital plausibly may be said to have "brought about" the other Defendants' failure to provide Mitchell with the care and treatment he required pursuant to the CRO, and the failure to provide Mitchell with such care and treatment has been alleged to have contributed to cause the deprivation of his civil rights and his death. At this stage of the litigation, where Plaintiff's factual allegations must be accepted as true, the Court cannot find that the actions of the other Defendants were superseding and intervening acts as a matter of law.

## IV. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Defendant Hart's Motion to Dismiss, ECF No. 10, be **DENIED**.

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The Chief United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 19, 2016