UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ROXANNE ADAMS, ADMINISTRATOR OF
THE ESTATE OF JAMYCHEAL M. MITCHELL,

    Plaintiff,

v.                                    CIVIL ACTION NO. 2:16cv229

NAPHCARE, INC., et al.,

    Defendants.

## OPINION

This matter comes before the court on the Motion to Dismiss ("Motion") and Memorandum in Support filed by Defendants Kelly Boyd ("Boyd") and Lenna Jo Davis ("Davis") on June 8, 2016. ECF Nos. 12, 13. The Plaintiff filed a Response on June 22, 2016, ECF No. 23, and Boyd and Davis filed a Reply and a Request for Hearing on June 29, 2016. ECF Nos. 32, 33.

On July 5, 2016, this court referred the Motion to a United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), to conduct hearings, including evidentiary hearings, if necessary, and to submit to the undersigned District Judge proposed findings of fact, if applicable, and recommendations for the disposition of the Motion. ECF No. 38.

Having conducted a hearing regarding the Motion on October 19, 2016, ECF No. 139, the Magistrate Judge filed the

Report and Recommendation ("R&R") on January 24, 2017. ECF No. 151. The Magistrate Judge recommended granting the Motion. R&R at 1. By copy of the R&R, the parties were advised of their right to file written objections to the findings and recommendations made by the Magistrate Judge. See id. at 21. On February 3, 2017, the Plaintiff filed an Objection, ECF No. 153, and on February 6, 2017, Davis and Boyd filed Objections. ECF No. 154. On February 14, 2017, the Plaintiff responded to the Objections by Davis and Boyd. ECF No. 160. On February 16, 2017, Boyd filed a response to the Plaintiff's Objection. ECF No. 161. The matter has been fully briefed and is ripe for review.

I.

This action was brought by the Plaintiff in her capacity as the administrator of the estate of Jamycheal Mitchell ("Mitchell"), who died as a pretrial detainee in the Hampton Roads Regional Jail ("HRRJ"). Compl. ¶¶ 1, 20. Relevant here, the Complaint alleges that Davis, as Clerk of the General District Court of Portsmouth, and Boyd, as a deputy clerk of that court, failed to send a judge's competency restoration order ("CRO") to Eastern State Hospital for Mitchell's mental health treatment, and that, as a result, Davis and Boyd were negligent and grossly negligent in causing Mitchell's death, as well as injury to him and his surviving beneficiaries. Id. ¶¶ 2, 34, 172, 194, 203, 205, 206, 208-210.

The instant Motion, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), seeks dismissal of the claims against Davis and Boyd because "[t]he Complaint fails to state sufficient and plausible claims of simple negligence and gross negligence against [Davis and Boyd], and the doctrine of absolute quasi-judicial immunity bars these claims." Mem. Supp. at 1. Davis and Boyd further argue that the claims are barred by statutory immunity under Virginia Code § 16.1-69.40. Id. at 13.

In the R&R, the Magistrate Judge found that neither quasi-judicial immunity nor statutory immunity bars the Plaintiff's claims against Davis and Boyd, but nonetheless recommended that the claims against them be dismissed. R&R at 1, 8-10. Davis and Boyd have objected to the Magistrate Judge's findings on quasi-judicial immunity and statutory immunity, see Defs.' Obj., and the Plaintiff has objected to the Magistrate Judge's recommendation of dismissing the claims against Boyd, though not to the recommendation of dismissing the claims against Davis. See Pl.'s Obj.

## II.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court, having reviewed the record in its entirety, shall make a de novo determination of those portions of the R&R to which a party has specifically objected. Fed. R. Civ. P. 72(b). The court may accept, reject, or modify, in whole

or in part, the recommendation of the magistrate judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1)(C).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means that a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). It is, therefore, not enough for a plaintiff to allege facts demonstrating a "sheer possibility" or "mere[] consist[ency]" with unlawful conduct. Id. (citing Twombly, 550 U.S. at 557).

The Supreme Court has offered the following guidance to courts evaluating a motion to dismiss:

4

> [A] court considering a motion to dismiss can choose
> to begin by identifying pleadings that, because they
> are no more than conclusions, are not entitled to the
> assumption of truth. While legal conclusions can
> provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-
> pleaded factual allegations, a court should assume
> their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

Id. at 679. That is, the court accepts facts alleged in the

complaint as true and views those facts in the light most

favorable to the plaintiff. See, e.g., Venkatraman v. REI Sys.,

Inc., 417 F.3d 418, 420 (4th Cir. 2005). After doing so, the

court should not grant the defendant's motion if the plaintiff

"demonstrate[s] more than 'a sheer possibility'" that the

defendant has violated his rights, by "articulat[ing] facts,

when accepted as true, that 'show' that the plaintiff has stated

a claim entitling him to relief . . . ." Francis v. Giacomelli,

588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S.

at 678) (as only quoting "a sheer possibility").

### III.

Defendants Davis and Boyd have both objected to the

Magistrate Judge's findings that neither quasi-judicial immunity

nor statutory immunity shields them from liability in this

action. On the issue of quasi-judicial immunity, the Magistrate

Judge found that Davis and Boyd are not protected because "they

are alleged to have failed to perform a ministerial act for

which they had no discretion"——that is, the transmission of the

CRO. R&R at 9 (citing McCray v. Maryland, 456 F.2d 1, 4 (4th Cir. 1972)). On the issue of statutory immunity, the Magistrate Judge found that Davis and Boyd are not protected because the statute in question "reserves such immunity to circumstances where clerks 'provid[e] information or assistance,'" while, "[a]s alleged here, the court clerks purportedly did not provide assistance." Id. at 10 (quoting Va. Code § 16.1-69.40).

The court will address the issues of quasi-judicial immunity and statutory immunity in turn. Moreover, as stated above, the court reviews de novo each part of the Magistrate Judge's R&R to which the parties object. See Fed. R. Civ. P. 72(b)(3). Due to the court's ruling below on the Plaintiff's Objection, the court will address two remaining matters that are necessary for resolving the instant Motion.

### A. Quasi-Judicial Immunity

Davis and Boyd argue that the Magistrate Judge's recommendation on quasi-judicial immunity is incorrect because "the Court Defendants, through Clerk Boyd, functioned in obedience to and under the general direction of the [General District Court]." Defs.' Obj. at 2-3. Davis and Boyd note that "Clerk Boyd transmitted the CRO on July 31, 2015, to Eastern State Hospital." Id. at 3. They then argue that, "[a]lthough the Complaint attempts to operate under the guise of a failure to act, Clerk Boyd's undeniable transmission betrays such attempt

6

and reveals the true spirit of the Complaint's theory—that the Court Defendants <u>allegedly</u> <u>acted</u> <u>late</u>." <u>Id.</u> (citing Compl. ¶ 172).[1]

These arguments fail for several reasons. Most importantly, the Defendants base their arguments on a federal standard of quasi-judicial immunity, relying principally on the Fourth Circuit's opinion in <u>McCray</u>. <u>See</u> Defs.' Obj. at 2-3. The Magistrate Judge likewise applied this standard. <u>See</u> R&R at 9 (citing <u>McCray</u>, 456 F.2d at 4). Nonetheless, as the Plaintiff has noted, the federal standard of quasi-judicial immunity does not apply here. <u>See</u> Pl.'s Resp. to Mot., ECF No. 23, at 24; Pl.'s Resp. to Defs.' Obj., ECF No. 160, at 4.

In <u>McCray</u>, the Fourth Circuit addressed quasi-judicial immunity for a Maryland state court clerk in an action brought under 42 U.S.C. § 1983. <u>See</u> <u>McCray</u>, 456 F.2d at 3-4. The immunity in question, therefore, while borrowed from common law, was being applied to a federal cause of action. <u>See</u> <u>id.</u> at 4

---

[1] Davis and Boyd also argue that quasi-judicial immunity protects them because "the [P]laintiff's own September 2015 'Timeline' . . . supports the R&R's reasonable inference that some person at the [General District Court] mailed the CRO on May 27, 2015," upon its issuance from the judge. <u>See</u> Defs.' Obj. at 3 n.2 (citing R&R at 15). However, that argument is not relevant to the instant Motion, because the Plaintiff has emphatically alleged that the CRO was not transmitted to Eastern State Hospital until more than two months after it was issued, <u>see</u> Compl. ¶ 65, and, at this juncture, the court accepts the Plaintiff's facts as true. <u>See</u> <u>supra</u> Part II.

("Immunities which have been read into section 1983, derive from those existing at common law.") (citing Pierson v. Ray, 386 U.S. 547, 554-55 (1967)). Here, by contrast, the Plaintiff's claims of negligence and gross negligence against Davis and Boyd are brought under state law, not federal law, see Compl. ¶¶ 203, 205-206, 208-211, and "when a federal court exercises diversity or pendent jurisdiction over state-law claims, 'the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'" Felder v. Casey, 487 U.S. 131, 151 (1988) (quoting Guaranty Trust Co. v. York, 326 U.S. 99, 109 (1945)). Accordingly, a reliance on the doctrine of quasi-judicial immunity, as extended to federal claims, would be in error, because any protection for Davis and Boyd under sovereign immunity doctrine would have to lie in state law. See, e.g., Harbeck v. Smith, 814 F. Supp. 2d 608, 631 (E.D. Va. 2011) (noting that "the sovereign immunity argument [for a state law claim of negligence] is governed by Virginia law, while § 1983 immunity is governed by federal law"). Accordingly, the court will not apply the doctrine of quasi-judicial immunity for federal claims to the state law claims at issue here.[2]

---

[2] Were the federal standard in McCray applicable here, the court would agree with the Magistrate Judge's analysis.

Under the applicable law of Virginia, "quasi-judicial immunity may extend to other public officials acting within their jurisdiction, in good faith and while performing judicial functions." Harlow v. Clatterbuck, 230 Va. 490, 493 (1986) (citing Yates v. Ley, 121 Va. 265, 270 (1917); Johnston v. Moorman, 80 Va. 131, 139 (1885)). To determine the scope of judicial function, Virginia has adopted the United States Supreme Court's "functional comparability" test, wherein the court determines whether the task "shares enough of the characteristics of the judicial process" to warrant immunity. Harlow, 230 Va. at 494 (quoting Butz v. Economou, 438 U.S. 478, 512-13 (1978) (internal quotation marks omitted)). In Butz, the United States Supreme Court found functional comparability in "the role of the modern federal hearing examiner or administrative law judge," whose "powers are often, if not generally, comparable to those of a trial judge: He may issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions." Butz, 438 U.S. at 513. The Supreme Court further explained that, "[m]ore importantly, the process of agency adjudication is currently structured so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency." Id. (emphasis added).

9

Applying Virginia's standard for quasi-judicial immunity to the instant case, the court finds that neither Davis nor Boyd are protected under that doctrine. Critically, the facts, as alleged by the Plaintiff, do not support a finding that Davis and Boyd were performing a judicial function, as envisioned under the Butz functional comparability test adopted by Virginia. The ministerial task of transmitting a court order does not entail the exercise of independent judgment, or powers comparable to those of a judge. Therefore, the application of quasi-judicial immunity for the claims against Davis and Boyd is not warranted under Virginia law.[3] Accordingly, Davis and Boyd's objection based on quasi-judicial immunity is hereby OVERRULED.

## B. Statutory Immunity

Davis and Boyd object to the Magistrate Judge's finding that they are not entitled to statutory immunity under Virginia law. Defs.' Obj. at 5. The provision in question states that "[n]o clerk or deputy clerk shall be civilly liable for providing information or assistance that is within the scope of his duties." Va. Code § 16.1-69.40. Davis and Boyd contend that this provision applies to them, because they "actually provided

---

[3]   The Plaintiff argues that the facts demonstrate a reasonable inference of bad faith and action beyond jurisdiction. See Pl.'s Resp. to Mot. at 27-28. However, because the lack of judicial function is sufficient to dispose of quasi-judicial immunity, the court declines to address the issues of bad faith and acting outside of the Defendants' jurisdiction.

assistance in the context of the CRO." Defs.' Obj. at 5. Davis and Boyd argue that "Clerk Boyd transmitted the CRO to [Eastern State Hospital] on July 31, 2015," and that, "[a]lthough allegedly untimely, this transmission was still assistance, and, contrary to the Complaint's allegations, [Davis and Boyd] should not be liable for the decedent's unforeseeable death three weeks later." Id.

The court agrees with the Magistrate Judge that Davis and Boyd's interpretation of Va. Code § 16.1-69.40 "stretches the meaning of these words beyond reasonable interpretation." R&R at 10. "As alleged here," the Magistrate Judge explained, "the court clerks purportedly did not provide assistance." Id. Because the Plaintiff has alleged that Davis and Boyd failed timely to have the CRO transmitted upon its issuance, the immunity offered through this statute is not applicable to the negligence and gross negligence claims against them, and their objection based on statutory immunity is **OVERRULED**.

## C. Plaintiff's Objection

The Plaintiff objects to the Magistrate Judge's recommendation that the claims of negligence and gross negligence against Boyd should be dismissed. See Pl.'s Obj.

at 1.[4] The Magistrate Judge based this recommendation on his finding that the Complaint fails to make a plausible showing that Boyd owed a duty toward Mitchell. R&R at 14. However, the Plaintiff argues that a document created by Boyd shows otherwise. See Pl.'s Obj. at 5-10. This document, called the "Timeline," provides a list of events in the Mitchell case at the Portsmouth General District Court, and it carries Boyd's name and signature at the bottom. See Timeline, ECF No. 139-1. The Magistrate Judge considered the Timeline in reviewing the Motion, as the document was explicitly referenced in the Complaint and offered by the Plaintiff as an exhibit "integral to the Complaint" at the hearing on this matter, with no objection from the Defendants. R&R at 7-8. Nonetheless, the Magistrate Judge found that the Timeline failed to demonstrate that Boyd owed any duty to Mitchell. Id. at 14-15. Specifically, the Magistrate Judge found that "the Timeline mentions nothing of Boyd's duties or responsibilities, or any facts supporting the conclusion that she personally had a duty to forward the CRO in May 2015 and failed to do so." Id. at 15.

The Plaintiff challenges this finding, arguing that "the Timeline document permits a reasonable inference that Boyd was charged with the handling of Mitchell's case and CRO from the

---

[4] The Plaintiff has not objected to the Magistrate Judge's recommendation of dismissing the claims of negligence and gross negligence against Davis. See Pl.'s Obj. at 3 n.2.

outset," Pl.'s Obj. at 8, and that a reasonable factfinder could make this conclusion based the following evidence from the Timeline:

> (1) Boyd was selected from among all deputy clerks to summarize Mitchell's case in a signed document after Mitchell's death and when there was an ongoing state investigation into his death, (2) Boyd summarized Mitchell's case by referring to herself but not to any other Clerk's Office employee, and (3) Boyd admitted to being personally charged with handling Mitchell's case and specifically his CRO by at least July 31, but did not indicate that she took over the case from another.

Id. at 8-9. Overall, the Plaintiff argues that because the Timeline suggests Boyd, and not another deputy clerk, was charged with handling Mitchell's case and transmitting the judge's CRO to Eastern State Hospital, the Plaintiff has satisfied her pleading burden. Id. at 9-10.

For the purpose of evaluating whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570), the court agrees that the Plaintiff has satisfied her burden and plausibly asserted that Boyd was the deputy clerk responsible for Mitchell's case and the transmission of the CRO to Eastern State Hospital. The Timeline is signed by Boyd alone, and, thus, it was ostensibly created by Boyd alone. Moreover, the Timeline mentions no other deputy clerk, and appears to state that Boyd

herself faxed the CRO to Eastern State Hospital in July 2015. At least in terms of plausibility, the court also finds the argument compelling that, had another deputy clerk been responsible for the Mitchell case, that deputy clerk would have been mentioned in the Timeline, or would have actually created the Timeline. Additionally, given that the Complaint asserts the Timeline was "added after-the-fact" to Mitchell's court file, see Compl. ¶ 65, the incentive for Boyd to ensure that the Timeline mentioned another deputy clerk responsible for Mitchell's case would have been especially strong.

For these reasons, the Timeline provides sufficient support for a reasonable factfinder to conclude that Boyd was the deputy clerk assigned to Mitchell's case, and therefore owed Mitchell a duty to forward the CRO. Accordingly, the Plaintiff has sufficiently pled the element of duty for the claims of negligence and gross negligence against Boyd, and the Plaintiff's Objection is **SUSTAINED**.[5]

### D. Remaining Matters

The court's rulings on the Objections do not resolve the Motion itself, because the Magistrate Judge, due to the

---

[5] Although the Magistrate Judge noted that the Timeline, by twice mentioning a transmission of the CRO to Eastern State Hospital, actually undermines the Plaintiff's claim that the CRO was never sent, see R&R at 15, this does not affect the question of Boyd's duty to send it. Rather, the factual dispute over the CRO's transmission lies beyond the instant stage of review.

recommendation of granting the Motion based on a failure to plead the element of duty, found that it was unnecessary to address whether the Plaintiff had adequately pled proximate cause, and whether the Plaintiff had adequately pled gross negligence. See R&R at 20.[6] However, since the court has sustained the Plaintiff's Objection on the issue of Boyd's duty to Mitchell, the court now addresses the two remaining matters of proximate cause and gross negligence, as they relate to Boyd.

### i. Proximate Cause

In the Motion, Boyd states that the Plaintiff has failed to plead the element of proximate cause for the claims of negligence and gross negligence against Boyd. Specifically, Boyd argues that "the alleged mistreatment and death of Mitchell, which are, respectively, horrific as pled and undeniably tragic, were in no way foreseeable to [Boyd] at any point between May 27, 2015 and August 19, 2015," and that "[t]he Complaint alleges no facts to demonstrate otherwise." Mem. Supp. at 10. Boyd further argues that she "could not have possibly foreseen that, at the very least, re-transmitting a copy of the CRO to

---

[6] The Magistrate Judge did note that the question of proximate cause "was addressed, however, along with the question of foreseeability, in the undersigned's Report and Recommendation with respect to Defendant Hart, and by the Chief District Judge in her January 19, 2017 Memorandum Order overruling Defendant Hart's objections thereto." R&R at 20 n.4 (citing ECF Nos. 147, 150).

Eastern State Hospital by facsimile on July 31, 2015, <u>which</u> <u>was</u> <u>still</u> <u>three</u> <u>weeks</u> <u>before</u> <u>Mitchell's</u> <u>death</u>, would naturally be stuffed away into a desk drawer and lead to the avoidable consequences alleged." <u>Id.</u> Additionally, Boyd argues that the Plaintiff has failed to allege "that . . . Boyd was aware of Mitchell's mistreatment and the extent of his personal situation." <u>Id.</u> In response, the Plaintiff argues that "[i]t was reasonably foreseeable that grave consequences could result from the failure to timely transmit an order concerning a man so mentally incompetent, that a judge ordered . . . immediate remand to a state mental hospital and immediate in-patient hospitalization therein." Pl.'s Resp. to Mot. at 18.

Under Virginia law, "[t]he proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." <u>Jenkins</u> <u>v. Payne</u>, 251 Va. 122, 128 (1996) (quoting <u>Beale v. Jones</u>, 210 Va. 519, 522 (1970)). Furthermore, "[t]here may be more than one proximate cause of an event." <u>Id.</u> (citing <u>Panousos v. Allen</u>, 245 Va. 60, 65 (1993)). Although "negligence intervening between the defendant's negligent act and the injury" may "relieve a defendant of liability for his negligent act," that intervening negligence "must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing

16

negligence by the defendant in the slightest degree, causes the injury." Id. at 29 (citing Panousos, 245 Va. at 65; Coleman v. Blankenship Oil Corp., 221 Va. 124, 131 (1980); City of Richmond v. Gay, 103 Va. 320, 324 (1905)).

Applying these standards, the court finds that the Plaintiff has plausibly alleged the element of proximate cause for the claims of negligence and gross negligence against Boyd. At this juncture, taking the Plaintiff's facts as true, the CRO was issued for Mitchell's immediate medical needs, and it would therefore be reasonably foreseeable for negative consequences, even death, to result from a failure timely to transmit the CRO to the proper authorities. Importantly, Boyd's argument for an intervening cause, such as the CRO's being "stuffed away into a desk drawer" at Eastern State Hospital, and other subsequent "avoidable consequences alleged," Mem. Supp. at 10, does not withstand the scrutiny of review at this stage of the proceeding. The court, based on the facts as alleged by the Plaintiff in the Complaint, may reasonably infer that Boyd's alleged failure to transmit the CRO for more than two months after its issuance was a proximate cause of Mitchell's death. The court may also reasonably infer that the alleged failure to process the CRO at Eastern State Hospital, as well as the alleged mistreatment of Mitchell at the jail, were other

proximate causes of his death, but not events that "so entirely supersede[d] the operation of the defendant's negligence that [they] alone, without any contributing negligence by the defendant in the slightest degree, cause[d] the injury." Jenkins, 251 Va. at 129 (citing Panousos, 245 Va. at 65; Coleman, 221 Va. at 131; City of Richmond, 103 Va. at 324). The extent to which a subsequent transmission of the CRO, three weeks before Mitchell's death, relieves Boyd of liability, if at all, is a question of fact to be resolved beyond this stage of the proceeding.

For these reasons, the Plaintiff has satisfied her pleading burden for the element of proximate cause in the claims of negligence and gross negligence against Boyd. In doing so, the Plaintiff has also satisfied her burden for pleading the claim of ordinary negligence against Boyd. See Trimyer v. Norfolk Tallow Co., 192 Va. 776, 780 (1951) ("To constitute actionable negligence there must be a duty, a violation thereof, and a consequent injury. An accident which is not reasonably to be foreseen by the exercise of reasonable care and prudence is not sufficient ground for a negligence action."). However, the question remains whether the Plaintiff has sufficiently pled the remaining claim of gross negligence against Boyd.

## ii. Gross Negligence

In Virginia, gross negligence is "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." Elliott v. Carter, 292 Va. 618, 622 (2016) (quoting Cowan v. Hospice Support Care, Inc., 268 Va. 482, 487 (2004) (internal quotation marks omitted)). Gross negligence "is a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care." Id. (quoting Chapman v. City of Va. Beach, 252 Va. 186, 190 (1996)). Indeed, gross negligence "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." Id. (quoting Cowan, 268 Va. at 487 (internal quotation marks omitted)). "Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by a jury," but "when persons of reasonable minds could not differ upon the conclusion that such negligence has not been established, it is the court's duty to so rule." Id. (quoting Frazier v. City of Norfolk, 234 Va. 388, 393 (1987)).

Boyd has argued that the claim of gross negligence against her must be dismissed because "[t]he Complaint alleges nothing to show, sufficient[ly] or plausibly, that . . . Clerk Boyd

19

deliberately acted to violate prudence and Mitchell's rights and safety." Mem. Supp. at 11.[7] Boyd further states that "[t]he positive act of re-transmitting a copy of the CRO by facsimile on July 31, 2015, itself, which was still three weeks before Mitchell's death, sufficiently defeats a claim of gross negligence as a matter of law." Id. Finally, Boyd adds that "the Complaint does not allege that [Davis and Boyd] were aware of Mitchell's alleged mistreatment and situation at [the jail] and, thus, could not have acted in deliberate neglect." Id. at 11-12.

In response, the Plaintiff argues that "Boyd's actions and inactions clearly constituted gross negligence," as she "failed every day for approximately a 60-day period to transmit the [CRO] to Eastern State [Hospital]." Pl.'s Resp. to Mot. at 23. The Plaintiff further argues that "Boyd knew, or should have known, that [her] repeated failure to carry out [her] duties could cause imminent, significant harm to the mentally ill Mitchell as he languished in jail and was not sent to a hospital for court-ordered treatment because of their failures." Id. at 24.

At this stage of the proceeding, before discovery has even begun, reasonable minds can differ over whether Boyd's alleged

---

[7] Although Boyd argues that she transmitted the CRO on two occasions, and that this shows "the presence and exercise of care and diligence," see Mem. Supp. at 11, once again, such an argument does not comport with the standard of review for the instant Motion. See supra note 1.

20

failure to transmit the CRO amounted to an "utter disregard of prudence that amounts to a complete neglect of the safety of such other person." Elliott, 292 Va. at 622 (quoting Cowan, 268 Va. at 487). Accordingly, the Plaintiff has sufficiently pled gross negligence against Boyd to survive the instant Motion.

## IV.

For the reasons above, Davis and Boyd's Objections, regarding the Magistrate Judge's findings on quasi-judicial and statutory immunity, are **OVERRULED**, and the Plaintiff's Objection, regarding the Magistrate Judge's finding that Defendant Boyd owed no duty toward Mitchell, is **SUSTAINED**. The Magistrate Judge's R&R is hereby **ADOPTED AND APPROVED** with respect to dismissing the claims of negligence and gross negligence against Davis, but **REJECTED** with respect to dismissing the claims of negligence and gross negligence against Boyd, and with respect to the basis of the finding, but not the ultimate finding itself, on quasi-judicial immunity.

Accordingly, the Motion to Dismiss is **GRANTED** with respect to the claims of negligence and gross negligence against Davis, and **DENIED** with respect to the claims of negligence and gross negligence against Boyd. The Plaintiff's claims of negligence and gross negligence against Davis are hereby **DISMISSED**, and the Plaintiff may proceed on the claims of negligence and gross negligence against Boyd.

21

The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for all parties.

IT IS SO ORDERED.

/s/
Rebecca Beach Smith
Chief Judge

REBECCA BEACH SMITH
CHIEF JUDGE

March 3 , 2017